STATE OF NORTH CAROLINA v. LARRY TINSLEY

No. 86

(Filed 1 June 1973)

1. Criminal Law § 99— questions propounded by trial court — no expression of opinion

Where the testimony of the State's principal witnesses was often inaudible, confusing and contradictory, questions posed by the trial court which helped to clarify and develop relevant evidence were proper and did not constitute an expression of opinion by the judge.

2. Criminal Law § 112— jury instructions — requirement of unanimity in reaching verdict — no error

Trial court's instruction to the jury that "all twelve of you must agree in order to bring in a lawful verdict. I don't mean to say that you have to agree as such, but I mean to tell you that you cannot bring in a lawful verdict unless it is unanimous under our law" was proper and did not mislead the jury with respect to reasonable doubt, particularly since the trial judge on at least six occasions correctly placed the burden upon the State to prove each element of the crime beyond a reasonable doubt in order for the jury to return a verdict of guilty.

3. Criminal Law § 90— impeachment of own witness

A party in a criminal case may not impeach his own witness, nor may he circumvent the rule by introducing the contradictory or inconsistent statements of the witness under the guise of corroborating evidence.

4. Criminal Law §§ 89, 90— corroborative statement — slight variance — admissibility of statement

Where the State called a witness and examined him and then introduced a prior statement made by the witness for the purpose of corroboration, an alleged variance between the testimony and the statement with respect to defendant's whereabouts and posture in relation to a rifle was too slight to render the statement inadmissible; moreover, defendant's general objection to the statement without a motion to exclude or strike the portion alleged to be incompetent was ineffective.

5. Criminal Law §§ 90, 169— impeachment of its own witness by State — no prejudicial error

The trial court erred in allowing the solicitor to elicit testimony from a State's witness to the effect that the witness was related to defendant and had been subpoenaed by defendant, since that evidence tended to show that the witness was unworthy of belief because of bias; however, the testimony of the witness was merely cumulative and its admission was not so prejudicial to defendant as to warrant a new trial.

State v. Tinsley

APPEAL by defendant from *Copeland, S. J.,* 2 January 1973 Special Criminal Session of JOHNSTON Superior Court.

Criminal prosecution on an indictment charging that "Larry Tinsley . . . on the 27th day of August . . . feloniously, wilfully, and of his malice aforethought, did kill and murder Eugene Whitley, . . . " The State proceeded on the theory of the felony murder rule, relying on a violation of G.S. 14-34.1.

The State's evidence tended to show that on 27 August 1972 defendant and Jesse Snead went to the home of Pat Simms where defendant obtained a .22 bolt action rifle. He left this weapon in the yard of a house located near the "Soul Strut," a restaurant and dance hall. Snead had previously left his automatic rifle at the same place.

Defendant and Snead visited the "Soul Strut" for a short time before going to the home of defendant's uncle, Frank Tinsley, where they consumed some wine. The two then returned to the dance hall and separated. Snead later heard some shooting from without the building, and upon going outside he saw defendant and John Merritt, the operator of the establishment, engaged in an argument. At that time defendant was carrying the .22 bolt action rifle.

Defendant was next seen by several witnesses armed with a rifle lying near a barrel about 40 feet from the side of the "Soul Strut." These witnesses testified that many shots were fired from this area into the building. The witness Snead also testified that he saw defendant lying in the bushes shooting. Gary Barber testified that he saw defendant shoot a gun while it was pointed toward the "Soul Strut."

The State also offered evidence tending to show that Eugene Whitley, aged 15, was in the "Soul Strut" on the night of 27 August 1972, and that he was killed by a .22 caliber bullet.

State's Exhibit # 1 was the bolt action rifle allegedly in the possession of defendant on the night in question. Expert testimony tended to show that the deceased was killed by a bullet fired from this rifle. The expert testimony also indicated that other bullets removed from the inside of the building had been fired from the same rifle.

Defendant's evidence, offered through his aunt, Betty Jean Tinsley, tended to show that he was highly intoxicated on the night of 27 August 1972.

The State did not seek the death penalty, and the jury returned a verdict finding defendant "guilty of murder in the first degree as charged in the bill of indictment with the recommendation that he be imprisoned for life." Defendant appealed.

*Attorney General Morgan; Assistant Attorney General Thomas B. Wood for the State.*

*Corbett & Corbett, by Albert A. Corbett, Jr. for defendant appellant.*

BRANCH, Justice.

[1] Defendant states his first assignment of error as follows: "Was the defendant, Larry Tinsley's, right to a fair and impartial trial prejudiced by the opinions expressed and the questions asked or objections sustained or overruled by the court in the presence of the jury?"

Defendant sets forth in his brief numerous excerpts from the record. It would be repetitious and unrewarding to set forth and consider each of the portions of the record challenged by this assignment of error. We think it sufficient to set forth representative portions which defendant contends were prejudicial.

"COURT: You say you heard some shooting outside?

A. I said I went in the place and there was some shooting going on on the outside. There were some people out there fussing.

COURT: Did you say you heard some shooting outside?

A. Yes sir.

COURT: Is that what you said?

A. Yes sir.

\*     \*     \*

Q. Awhile ago you said you didn't see any guns except the first time when you saw the guns.

STATE OBJECTS.

COURT: You are making a statement. OBJECTION SUSTAINED.

QUESTIONS continued by Mr. Corbett:

The first time I went over there back to Frank's house I saw Larry Tinsley, Jesse Snead and Billy Ray, all three of them, standing there. Jesse Snead had both guns in his hands. I saw Larry Tinsley laying down by the barrel or something like that.

COURT: Did you say you did or didn't?

A. Yes sir."

The bulk of defendant's exceptions under this assignment of error involves questions directed to the State's principal witnesses—three teenagers present at the "Soul Strut" on the night of the shooting. It is manifest from a reading of the record that the testimony of these witnesses was often inaudible, confusing and contradictory.

In *State v. Kirby*, 273 N.C. 306, 160 S.E. 2d 24, this Court stated: "The presiding judge is entirely justified in propounding competent questions to a witness in order to clarify what a witness has said or to develop some relevant fact which has been overlooked. However, care must be exercised to avoid indirect expression of opinion on the facts, and it is improper for the trial judge to ask questions which are reasonably calculated to impeach or discredit the witness or his testimony. *State v. Kimrey*, 236 N.C. 313, 72 S.E. 2d 677."

Careful examination of the trial record reveals no comment by the trial judge which might reasonably be interpreted as tending to impeach or discredit any of the witnesses. To the contrary, it appears that the trial judge exercised remarkable patience and impartiality in posing questions which clarified and developed relevant evidence.

[2] Defendant also contends the following portion of the trial judge's instructions to the jury constituted prejudicial error.

"Now a verdict does not become a verdict unless it is unanimous, and all twelve of you must agree in order to bring in a lawful verdict.

I don't mean to say that you have to agree as such, but I mean to tell you that you cannot bring in a lawful verdict unless it is unanimous under our law.

DEFENDANT'S EXCEPTION NO. 19"

Defendant argues that this portion of the charge might have led the jury to believe that they could reach an agreement even though they had a reasonable doubt concerning defendant's guilt. We do not agree. In the first sentence of this portion of the charge, the judge correctly instructed the jury that their verdict must be unanimous. The second sentence seems to emphasize that the court was not mandating a unanimous verdict if any juror had reasonable doubt as to defendant's guilt. In any event, if there was any ambiguity in this portion of the charge, it was cured by the fact that the trial judge on at least six occasions (including his final mandate to the jury) correctly placed the burden upon the State to prove each element of the crime beyond a reasonable doubt in order for the jury to return a verdict of guilty.

This assignment of error is overruled.

In his last assignment of error defendant contends the trial judge committed prejudicial error by allowing the State to impeach its own witness.

Billy Ray, a tenth-grade student at Smithfield-Selma High School, testified in substance that on the night of 27 August 1972 he saw defendant and Jesse Snead in the vicinity of the "Soul Strut" loading their rifles, and that Snead handed him a rifle to "hold for a minute." He later "laid the gun on the ground and went in the Soul Strut." On cross-examination the witness said: "I did not see Larry Tinsley (defendant) laying down by any barrel."

The State subsequently offered a written statement previously given to Sergeant Leaman Jones of the Selma Police Department by Billy Ray. This statement corroborated Ray's in-court testimony concerning the events of the night in question, except that it was more detailed and contained the following statement: "Jesse told me to hold his gun and *I laid it down beside Larry* and went in the place so I would not get in trouble." (Our emphasis.)

Defendant contends that the written statement so materially varies from Billy Ray's testimony that it impeached rather than corroborated the witness.

State v. Tinsley

**[3]**  It is true that a party in a criminal case may not impeach his own witness. *State. v. Anderson,* 283 N.C. 218, 195 S.E. 2d 561. Nor may a party circumvent the rule by introducing the contradictory or inconsistent statements of the witness under the guise of corroborating evidence. *State v. Bagley,* 229 N.C. 723, 51 S.E. 2d 298. Nevertheless, "slight variances in the corroborative testimony do not render it inadmissible." *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745; *State v. Case,* 253 N.C. 130, 116 S.E. 2d 429.

**[4]**  The portion of the written statement allegedly presenting a variance relates to defendant's whereabouts and posture in relation to the rifle. Whether defendant was in a sitting, standing or prostrate position, or whether defendant was stationed near a barrel is of minor significance. The variance, if any, was too slight to render the written statement inadmissible.

Further, when the written statement was offered, defendant's counsel lodged a general objection to the whole statement. Portions of the statement tended to corroborate the witness. Defendant's general objection without moving to exclude or strike the portion alleged to be incompetent was ineffective. *State v. Brooks,* 260 N.C. 186, 132 S.E. 2d 354; *State v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84.

**[5]**  Under this assignment of error defendant also argues that the trial judge improperly permitted the Solicitor to elicit from his witness, Billy Ray, the fact that he was related to defendant and that he had been subpoenaed by defendant. There is merit in this argument since this testimony appears to have been drawn from the witness for the purpose of showing him to be unworthy of belief because of bias. *State v. Anderson, supra.* However, the testimony of the witness Ray was merely cumulative and the admission of the challenged evidence does not appear to have so prejudiced defendant as to warrant a new trial. *State v. Fletcher and St. Arnold,* 279 N.C. 85, 181 S.E. 2d 405; *State v. Temple,* 269 N.C. 57, 152 S.E. 2d 206.

This assignment of error is overruled.

Our review of this entire record reveals no reversible error.

No error.