STATE OF NORTH CAROLINA v. GARLAND WAYNE CARTER

No. 33

(Filed 11 November 1977)

1. **Criminal Law § 89— evidence supporting witness's credibility**

    Evidence tending to support a witness's credibility is admissible when he is impeached in any manner including contradictory statements, cross-examination, or contradiction by other witnesses.

2. **Criminal Law § 89.5— noncorroborative testimony—slight variance—absence of prejudice**

    In a prosecution for murder committed in the perpetration of an armed robbery wherein the evidence tended to show that decedent's companion was the victim of the robbery, defendant was not prejudiced by an officer's noncorroborative testimony that the companion told him that defendant had taken the decedent's billfold before he robbed the companion since (1) defendant entered only a general objection to the officer's testimony, all other portions of which did corroborate the companion's testimony, and failed to point out the testimony which he claims was erroneously admitted, and (2) whether defendant first robbed decedent before he completed the robbery of decedent's companion was of little consequence, and the officer's tetimony constituted only a slight variance from the companion's testimony.

3. **Criminal Law § 46.1— inability to find defendant—evidence of flight**

    An officer's testimony that he obtained a warrant for defendant's arrest on the date of the crime, February 1, and had been attempting service but could not locate defendant until February 6 was competent to show flight by defendant; furthermore, any possible error in the admission of such testimony was cured by a defense witness's testimony that she and defendant fled the crime scene and, after driving around for one or two days, lived in the woods until their surrender on February 6.

4. **Homicide § 25.1— murder in perpetration of robbery—robbery of person other than decedent**

    In a prosecution for murder allegedly committed during the perpetration of an armed robbery, the trial court did not err in instructing the jury that the "armed robbery or attempted armed robbery need not be of a person who may have been shot."

5. **Criminal Law § 89.5; Homicide § 25.1— murder in perpetration of robbery— instruction not reference to noncorroborative testimony**

    In this prosecution for murder committed in the perpetration of an armed robbery of decedant's companion, the court's instruction that one of the elements of armed robbery was that defendant took property from the companion "or took property in [the companion's] presence" did not constitute a prejudicial reference to an officer's noncorroborative testimony to the effect that decedent was robbed where the trial judge instructed the jury to

disregard evidence concerning a robbery of decedent and made it absolutely clear in his final mandate to the jury that the companion was the victim of the robbery.

APPEAL by defendant from *Long, J.*, 24 January 1977 Session of DAVIDSON Superior Court. Defendant was charged with first degree murder and armed robbery. He entered pleas of not guilty.

The State's crucial evidence was offered through the Witness Dennis Porterfield. This evidence, in substance, discloses that on 31 January 1976, defendant and his girlfriend, Kay Huffman, were at the Captain's Lounge in High Point, North Carolina. Kay Huffman became angered because defendant was dancing with another woman, and she told him that she wanted to go home. Defendant refused to leave, and she thereupon arranged for a ride home with James Price and Dennis Porterfield. On the way, they stopped at another tavern in order for Price to pick up some beer. According to Porterfield, Price had bargained with Kay Huffman to have sexual relations with her for the sum of $10.00. They arrived at the residence of Kay Huffman in Thomasville, North Carolina, about midnight. The three of them were in the living room when Kay suddenly exclaimed, "My God, it's my boyfriend." She ran to another part of the house. At that point, defendant and another man came into the room through the front door. Defendant had a pistol in his right hand. Upon observing defendant armed with a pistol, Porterfield backed toward the hall and the bedroom door. Upon defendant's orders, he lay face downward on the bed. Porterfield managed to see James Price and defendant falling to the floor of the bedroom. He heard a pistol fire as the two men went to the floor and he then heard Price say: "Don't shoot me again, you have shot me once." As defendant was getting up from the floor, he shot Price again. Defendant then pointed the pistol toward Porterfield's face and Porterfield said: "Don't shoot me, just take what you want and go." Thereupon, defendant took about $75.00 from Porterfield's wallet. Upon Porterfield's suggestion, Kay Huffman, the defendant, and Porterfield carried Price to the automobile he had been driving for the purpose of transporting him to the hospital. Before Kay Huffman was able to start the car, Porterfield announced that Price was dead. Kay Huffman, defendant, and his unidentified companion left in another car. Porterfield called the

police and waited for their arrival. Later that night at the police station, Porterfield viewed nine photographs of white males and picked out defendant's photograph as being a picture of the man who shot Price.

Detective Don Truell testified that he obtained a warrant for defendant's arrest on 1 February 1976 and tried to execute the warrant without success until 6 February 1976 when defendant "turned himself in."

It was stipulated that if Dr. E. Earl Jackson were in court, he would testify that the probable cause of Price's death was a gunshot wound in the chest.

The only other eye witness to the alleged crime was defendant's Witness Kay Huffman. Her evidence was substantially the same as Porterfield's concerning the events prior to the arrival of defendant in her home, except she denied having any agreement with Price concerning sexual relations. Her account of the pertinent events after reaching her home was in essence as follows: When she, Price, and Porterfield arrived at her home, Porterfield tried to get her to join him in the bedroom where he was sitting when defendant arrived. Defendant asked Porterfield "what in the hell he was doing in his girlfriend's house?" Porterfield made a derogatory remark about Kay Huffman and defendant pushed him back on the bed. At that time, Price ran into the bedroom with a gun in his hand and defendant grabbed his arm. During the ensuing struggle between defendant and Price, the gun went off two times wounding Price. Kay Huffman, Porterfield, and defendant then managed to get Price to the car he had been driving, but before Kay was able to start the car, Porterfield announced that Price was dead. Porterfield ran and Kay Huffman and defendant left in the other car. She and defendant rode around for one or two days and then lived in the woods until they voluntarily went to the police on 6 February 1976.

The jury returned verdicts of guilty of first degree murder and guilty of armed robbery. Defendant appealed from judgment imposing a sentence of life imprisonment on the murder charge. The judgment did not mention the armed robbery conviction.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State.*

*J. Calvin Cunningham, for the defendant-appellant.*

BRANCH, Justice.

Defendant first contends that the trial judge erred by admitting testimony of Detective Truell which was offered to corroborate the testimony of Porterfield. Initially, defendant seems to take the position that this evidence was inadmissible because Porterfield had not testified to the content of the statement as he had related it to Detective Truell. This argument is without merit.

[1, 2] In this jurisdiction, evidence tending to support a witness's credibility is admissible when he is impeached in any manner including contradictory statements, cross examination, or contradiction by other witnesses. *State v. Cope*, 240 N.C. 244, 81 S.E. 2d 773. Some of our more recent cases tend to recognize the admissibility of corroborative evidence without even considering the question of whether the witness has been impeached. *See*, 1 Stansbury's N.C. Evidence, *Witnesses* Sec. 50 (Brandis Rev.), and cases there cited. One of the most widely used and well-recognized methods of strengthening the credibility of a witness, as was done here, is by the admission of prior consistent statements. *State v. Caddell*, 287 N.C. 266, 215 S.E. 2d 348; *State v. Sawyer*, 283 N.C. 289, 196 S.E. 2d 250; *State v. Bennett*, 226 N.C. 82, 36 S.E. 2d 708. Defendant, however, argues that the challenged evidence was erroneously admitted because the Witness Porterfield did not testify to certain facts which the officer's testimony allegedly corroborated. In his testimony, offered for the purpose of corroboration, Detective Truell testified: "Porterfield said this man then took James' billfold out of his pocket, took his money . . . ." The record shows that Porterfield did not so testify. All other portions of Truell's testimony tend to corroborate the evidence given by Porterfield.

The rule of law which defendant relies upon is well stated in *State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354, as follows:

> If a prior statement of a witness, offered in corroboration of his testimony at the trial, contains additional evidence going beyond his testimony, the State is not entitled to introduce this "new" evidence under a claim of corroboration. Neither may the State impeach or discredit its own witness by introducing his prior contradictory statements under the guise of corroboration. *State v. Bagley*, 229 N.C. 723, 51 S.E.

2d 298; *State v. Melvin*, 194 N.C. 394, 139 S.E. 762; *State v. Scoggins*, 225 N.C. 71, 33 S.E. 2d 473. However, if the previous statements offered in corroboration are generally consistent with the witness' testimony, slight variations between them will not render the statements inadmissible. Such variations affect only the credibility of the evidence which is always for the jury. *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429; *State v. Walker*, 226 N.C. 458, 38 S.E. 2d 531; *State v. Scoggins*, supra.

\*   \*   \*

Where portions of a document are competent as corroborating evidence and other parts incompetent, it is the duty of the party objecting to the evidence to point out the objectionable portions. Objections to evidence en masse will not ordinarily be sustained if any part is competent. *State v. Litteral*, 227 N.C. 527, 43 S.E. 2d 84; *State v. Wilson*, 176 N.C. 751, 97 S.E. 496; *State v. English*, 164 N.C. 497, 80 S.E. 72; *Gibson v. Whitton*, 239 N.C. 11, 79 S.E. 2d 196; *Grandy v. Walker*, 234 N.C. 734, 68 S.E. 2d 807; *Wilson v. Williams*, 215 N.C. 407, 2 S.E. 2d 19. N.C. Index, Trial, Sec. 15.

*Accord: State v. Tinsley*, 283 N.C. 564, 196 S.E. 2d 746.

Here when the district attorney asked Detective Truell to relate the statement made by Porterfield to him on 1 February 1976, defense counsel entered a general objection. During Detective Truell's lengthy testimony, counsel failed to further object or point out the testimony which he now claims to have been erroneously admitted; neither did he move to strike that testimony. Detective Truell's testimony did not contradict Porterfield's testimony and was generally consistent with it.

The State's evidence raises reasonable inferences which would have permitted, but not have required, the jury to find that defendant came into the home of Kay Huffman with the intent to commit an armed robbery and during the course of that robbery shot and killed James Price. Whether he first robbed Price before he completed the armed robbery of Porterfield is of little consequence. Therefore, the variance between Porterfield's testimony and the Witness Truell's corroborative testimony was slight. Further the trial judge carefully and correctly instructed the jury as to the purpose for which this evidence was admitted,

and in his charge cautioned the jury that it should not consider that portion of Truell's evidence which varied from Porterfield's sworn testimony.

We hold that there was no error prejudicial to defendant in the admission of Detective Truell's corroborative testimony.

[3] Defendant's "Issue Two" is as follows: "Did testimony of Officer Truell, a law enforcement officer, to the effect that defendant fled to avoid service of warrants, constitute incompetent, irrelevant and immaterial questioning to the prejudice of the defendant?" We find nothing in this record which discloses that Detective Truell testified that defendant fled to avoid service of warrants. The detective stated that he obtained a warrant for defendant's arrest on February 1, and had been attempting service but could not locate defendant until February 6.

Defendant relies on the cases of *State v. Lee*, 287 N.C. 536, 215 S.E. 2d 146, and *State v. Lampkins*, 283 N.C. 520, 196 S.E. 2d 697, to support his position. His reliance is misplaced. Both *Lee* and *Lampkins* turn on the question of whether there was sufficient record evidence to support an instruction on flight. In instant case, there was no exception or assignment of error relating to the trial judge's charge on flight. Rather, defendant seems to question the *competency* of the evidence. The answer to this contention is found in the following language from *State v. Lampkins, supra*:

> . . . most jurisdictions recognize that testimony of a law enforcement officer to the effect that he searched for the accused without success after the commission of the crime is competent. See cases collected in Annot., 25 A.L.R. 886; Wharton's Criminal Evidence Section 214 (1972). See also, *State v. Wallace*, 162 N.C. 622, 78 S.E. 1; *State v. Jones*, 93 N.C. 611.

Our conclusion that there is no merit to this contention is strengthened by the fact that defense Witness Kay Huffman later testified that she and defendant fled the scene and after driving around for one or two days lived in the woods until their surrender on 6 February 1976. This testimony was of the same import as that here challenged. Its later admission without objection cured any possible error in the admission of the evidence relating

to flight. *State v. Jarrett*, 271 N.C. 576, 157 S.E. 2d 4, *cert. denied*, 389 U.S. 865.

[4] Finally defendant contends that the trial judge committed prejudicial error in his charge upon armed robbery and the felony murder rule.

In his charge on the underlying felony of armed robbery, the trial judge stated, "Armed robbery or attempted armed robbery need not be of a person who may have been shot." We are of the opinion that this is a substantially correct statement of the law. G.S. 14-17 declares that a murder committed in the perpetration of *any* robbery or attempted robbery is deemed to be murder in the first degree. *See, State v. Squire*, 292 N.C. 494, 234 S.E. 2d 563. Here the homicide was linked to and was a part of a series of incidents forming one continuous transaction which resulted in decedent's being killed during the course of an armed robbery. See, *State v. Thompson*, 280 N.C. 202, 185 S.E. 2d 666.

[5] The second portion of the charge to which defendant excepts is in the trial judge's statement of the elements of the felony of armed robbery. He charged, "One, that the defendant took property from the person of Dennis Porterfield *or took property in Porterfield's presence*." (Emphasis ours.) Defendant argues that the italicized portion of the preceding quotation constituted a prejudicial reference to the non-corroborative statement of the Witness Truell to the effect that Price was robbed. We disagree. Immediately after charging on the elements of armed robbery, the trial judge in his final mandate to the jury on the charge of armed robbery made it absolutely clear that Porterfield was the victim of the robbery. In light of this charge and the trial judge's careful and clear instructions to the jury that it should disregard the evidence concerning a robbery of the decedent, we conclude that the jury would not have been misled by the use of this rather ambiguous phrase.

We find nothing in defendant's assignments of error or in this record which would justify a new trial.

No error.