STATE OF NORTH CAROLINA v. RANDY DARRELL SHEPHERD

No. COA03-404

(Filed 20 April 2004)

**1. Confessions and Incriminating Statements— post-polygraph interview—motion to suppress**

The trial court did not err in a first-degree statutory rape, first-degree sexual offense, and indecent liberties case by denying defendant's motion to suppress his confession made during the post-test interview after a voluntary polygraph examination,

because: (1) even though the line of questioning during the post-test interview constituted an interrogation, defendant's waiver of rights covered his answers to the questions; (2) several waivers of rights that defendant and his attorney signed leading up to the polygraph examination constituted competent evidence that defendant understood his Miranda rights and waived his right to counsel; and (3) there was competent evidence that the statement was voluntary and within the waiver coverage.

**2. Criminal Law— judge questioning witness from bench— clarification—not expression of opinion**

The trial court did not commit plain error in a first-degree statutory rape, first-degree sexual offense, and indecent liberties case by interrogating a witness from the bench, because: (1) the trial court questioned the witness to clarify the critical element of penetration; and (2) the jury could not reasonably infer that the judge was expressing an opinion as to the facts of the case.

**3. Criminal Law— motion for mistrial—jurors viewed un-redacted documentary evidence**

The trial court did not commit plain error in a first-degree statutory rape, first-degree sexual offense, and indecent liberties case by failing to declare a mistrial after jurors viewed an unredacted form of documentary evidence, because: (1) when the trial court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured; and (2) any prejudice to defendant's case was cured by the trial court's instructions to those jurors that saw the unredacted statement.

**4. Rape; Sexual Offenses— first-degree statutory rape—first-degree sexual offense—indecent liberties—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motions to dismiss the charges of first-degree statutory rape, first-degree sexual offense, and indecent liberties at the close of all evidence, because even though a nurse and doctor who examined the victim testified that they did not find conclusive physical evidence that a sex act occurred, there was evidence, including the victim's testimony, that defendant committed numerous sexual acts against her, and forensic evidence corroborated the victim's testimony.

STATE v. SHEPHERD

[163 N.C. App. 646 (2004)]

Appeal by defendant from judgment entered 24 October 2002 by Judge W. Erwin Spainhour in Rockingham County Superior Court. Heard in the Court of Appeals 29 January 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Anita LeVeaux, for the State.*

*Terry W. Alford for the defendant.*

TIMMONS-GOODSON, Judge.

Randy Darrell Shepherd ("defendant") was indicted by the Rockingham County Grand Jury on 1 October 2002 on two counts of first-degree rape, one count of first-degree sex offense, and two counts of indecent liberties. Defendant appeals his convictions of first-degree statutory rape, first-degree sexual offense, and indecent liberties. For the reasons stated herein, we hold that defendant received a trial free of prejudicial error.

The factual and procedural history of the case is as follows: On or about 1 August 2001, the victim's mother ("T.S.") was told by a neighbor ("R.H.") that defendant had "grabbed" R.H.'s daughter while they were together on a hiking trail, and suggested that T.S. ask the victim ("A.J.") if defendant had ever molested her. On the same day, T.S. and A.J. had a conversation where A.J. confided that defendant had indeed been molesting her. On 4 August 2001, T.S. went to the local police station to report the inappropriate sexual contact. Criminal charges were subsequently filed against defendant alleging two counts of first-degree rape of a child, and first-degree sexual offense. T.S. also sought a medical examination for A.J. Defendant was arrested 4 August 2001, and the Rockingham County Sheriff's office conducted a forensic investigation in the family's home.

In February 2002, defendant requested from jail, through his attorney, to take a polygraph examination. At the polygraph examination, conducted on 13 February 2002, Detective Tami Howell ("Detective Howell") provided defendant with a document entitled *Statement of Rights and Waiver of Rights,* which was read aloud to him, and which he and his attorney, Stanley Allen ("Attorney Allen"), signed. Detective Howell then provided defendant with a second document stating the following:

I, Randy Darrell Shepherd am represented by counsel, attorney Stan Allen. I have asked that attorney Allen request a polygraph examination for me. I have been advised of my rights and have

STATE v. SHEPHERD

[163 N.C. App. 646 (2004)]

signed a waiver of these rights. I also waive the presence of my attorney at the polygraph examination. I understand that if I make any statements relevant to my case that my attorney and I waive any Miranda issues that may arise at trial.

Defendant and Attorney Allen also signed this second document. Special Agent Michael Wilson ("Agent Wilson") of the State Bureau of Investigation then conducted the polygraph examination, which consisted of three phases: the "pre-test examination," the "instrumentation phase," and the "post-test interview." Agent Wilson testified describing the polygraph examination process at trial as follows:

[during the first phase] we talk to the subject and get to know the subject, build some rapport and make the final determination on what questions should be asked. During the second phase . . . we actually measure and evaluate the physiology of the subject. The third phase . . . is a post[-]test interview in which we discuss why or why not a subject may or may not have passed or failed the polygraph examination.

During the pre-test examination, Agent Wilson provided defendant with a written Advice of Rights, which was also read aloud to him, and which he signed. The Advice of Rights reads in pertinent part: "I have the right, at any time, to stop my participation in the interview and polygraph examination by not answering any question . . . ."

After Agent Wilson advised defendant of his rights, Agent Wilson proceeded with the instrumentation phase. After administering the examination and reviewing his findings, Agent Wilson determined that his findings were inconclusive. Agent Wilson testified at trial regarding the post-examination interview as follows:

During the course of our conversation, I asked him, "How long this," meaning the sexual offenses with [A.J.], "had been going on?" He then stated to me "Not as long as they said." I then asked him, "Then how long?" He then stated to me, "A month." I then asked, "The month before you got arrested?" He then nodded yes to me. . . . After nodding yes, he stated he thought he needed his attorney now—his lawyer now. . . . Immediately after he stated that he thought he needed his lawyer, the interview was terminated.

At trial, defendant moved to suppress the post-examination confession, which the trial judge denied.

Defendant was convicted of first-degree statutory rape, first-degree sex offense, and indecent liberties. It is from these convictions that defendant appeals.

————————————

The issues presented on appeal are whether the trial court erred by (I) denying defendant's motion to suppress his statements made during the post-test interview; (II) interrogating a witness from the bench; (III) failing to declare a mistrial after jurors viewed an unredacted form of documentary evidence; (IV) denying defendant's motions to dismiss the charges at the close of State's evidence and at the close of all evidence.

**[1]** Defendant first argues that the trial court should have granted his motion to suppress the confession made during his post-test examination interview. We disagree.

In ruling on a motion to suppress, "[t]he trial court makes the initial determination as to whether an accused has waived his right to counsel." *State v. Eason*, 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994) *cert. denied sub nom. Eason v. North Carolina*, 513 U.S. 1096 (1995). The trial court must then consider the voluntariness of the confession "in light of the totality of the circumstances." *State v. Barlow*, 330 N.C. 133, 140-41, 409 S.E.2d 906, 911 (1991), *distinguished by State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326 (2000). The trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *Eason*, 336 N.C. at 745, 445 S.E.2d at 926.

Defendant argues that Agent Wilson's line of questioning during the post-test interview phase strays from the stated purpose of the post-test phase, and thus is not covered by defendant's waiver of rights. Indeed, the trial court addressed this issue to the State during the suppression hearing with the following colloquy:

> THE COURT: Mr. Grogan, what concerns me is that the questions put at that so-called third phase—I see no connection between those questions and what your witness said the purpose of that third phase was. It didn't have any bearing to explaining, if it could be explained, why the test was inconclusive, why someone passes or fails a test. It was further interrogation.

However, after deliberation, the trial court entered the following findings of fact:

the defendant, Randy Shepherd, knowingly and voluntarily waived his rights with regard to the complete polygraph examination, including waiving his rights with regard to the pre-interview and . . . post-testing procedures. Therefore, these statements that have been made in response to questions were covered by that voluntary waiver and are admissible.

Our Supreme Court notes in *State v. Harris* the following:

[T]he term "interrogation" under *Miranda* [*Miranda v. Arizona,* 384 U.S. 436 (1966)] refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

67 N.C. App. 97, 100, 312 S.E.2d 541, 542 (1984), *review denied and appeal dismissed,* 311 N.C. 307, 317 S.E.2d 904 (1984); *quoting Rhode Island v. Innis,* 446 U.S. 291, 301 (1980). Thus, we agree with the trial court's assessment that Agent Wilson's line of questioning during the post-test interview constitutes an interrogation. We hold that the trial court's findings support the conclusion that defendant's waiver of rights covers his answers to Agent Wilson's questions.

In reaching our conclusion, we find this Court's decision in *State v. Soles* to be instructive. 119 N.C. App. 375, 459 S.E.2d 4 (1995), *discretionary review denied and appeal dismissed,* 341 N.C. 655, 462 S.E.2d 523 (1995). In *Soles,* the defendant voluntarily submitted to a polygraph examination although he was not in police custody. Prior to taking the polygraph, defendant waived his *Miranda* rights. During the examination, "the polygraph examiner confronted defendant about patterns of deception and questioned him off the polygraph." 119 N.C. App. at 381, 459 S.E.2d at 8. The defendant's answers to those questions later formed the basis for several indictments against him. This Court concluded "that neither the polygraph operator asking questions off the polygraph nor questioning by officers vitiated defendant's waiver of his *Miranda* warnings with respect to this . . . statement." *Id.* at 386, 459 S.E.2d at 9.

In accordance with *Soles,* we conclude that the several waivers of rights that defendant and his attorney signed leading up to the polygraph examination constitute competent evidence that defendant understood his *Miranda* rights and waived his right to counsel. The trial court did not err by finding that the waivers apply to all phases of the polygraph examination.

Turning to the question of whether the confession was voluntary, we note that defense counsel conceded this point at trial:

THE COURT: . . . I take it from the evidence I heard you do not contend that the statement was involuntary?

MR. ALLEN: No, sir.

THE COURT: There was no question about the fact that this was a voluntary statement?

MR. ALLEN: No, sir.

Thus, we must conclude that there is competent evidence to support the determination by the trial court that the confession was voluntary and within the waiver coverage. Accordingly, we hold that the trial court's findings of fact are conclusive on appeal, and that the trial court did not err by admitting defendant's inculpatory statements into evidence.

[2] In his second assignment of error, defendant argues that the trial court committed plain error by interrogating a witness from the bench. We disagree.

In *State v. Torain*, our Supreme Court held as follows:

A prerequisite to our engaging in a "plain error" analysis is the determination that the [trial court's action] constitutes "error" at all. Then "before deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict."

316 N.C. 111, 116, 340 S.E.2d 465, 468 (1986), *cert. denied sub nom. Torain ·v. North Carolina*, 479 U.S. 836 (1986), *distinguished by State v. Young*, 317 N.C. 396, 346 S.E.2d 626 (1986); *quoting State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986).

North Carolina Rule of Evidence 614(b) provides that "[t]he court may interrogate witnesses, whether called by itself or by a party." N.C. Gen. Stat. § 8C-1, Rule 614(b) (2003). "The court may also question a witness for the purpose of clarifying a witness' testimony and for promoting a better understanding of it." *State v. Chandler*, 100 N.C. App. 706, 710, 398 S.E.2d 337, 339 (1990), *citing State v. Whittington*, 318 N.C. 114, 347 S.E.2d 403 (1986). "Such examination must be conducted with care and in a manner which avoids prejudice to either party." *Chandler*, 100 N.C. App. at 710, 398 S.E.2d at 339, *cit-*

*ing State v. Colson,* 274 N.C. 295, 163 S.E.2d 376 (1968). "No objections are necessary with respect . . . to questions propounded to a witness by the court but it shall be deemed that proper objection has been made and overruled." N.C. Gen. Stat. § 8C-1, Rule 614(c) (2003).

In the case *sub judice,* to prove first-degree statutory rape, the State must prove, *inter alia,* that there was "penetration, however slight, by any object into the genital or anal opening of another person's body." N.C. Gen. Stat. § 14-27.1(4) (2003). The State presented testimony from Dr. Angela Stanley ("Dr. Stanley") who conducted a medical examination of A.J. Dr. Stanley testified that A.J. could not perceive penetration into her vagina because she had a "fixed septum." During Dr. Stanley's testimony the trial judge conducted the following examination of the witness:

THE COURT: Let me ask a question, Doctor. You say it was not possible due to her congenital abnormality to have penetration inside her vagina.

THE WITNESS: Yes, sir.

THE COURT: It is possible, according to your findings to have penetration of her vaginal area, however slight?

THE WITNESS: It is possible to go beyond the labia, the outer lips, and push against her hymen, but because of that fibrous band, then you would—it would be possible to press against her vaginal opening but not inside of her vagina.

THE COURT: But there will be penetration of her vaginal labia?

THE WITNESS: Yes, sir.

"A trial judge's questions, propounded to a witness to clarify his confusing or contradictory testimony, do not constitute an expression of opinion unless a jury could reasonably infer that the questions intimated the court's opinion as to the witness's credibility, the defendants' guilt, or as to a factual controversy to be resolved by the jury." *State v. Yellorday,* 297 N.C. 574, 581, 256 S.E.2d 205, 210 (1979), *citing State v. Tinsley,* 283 N.C. 564, 196 S.E.2d 746 (1973). Having reviewed the trial court's examination of Dr. Stanley, we conclude that the trial judge questioned the witness to clarify a critical element of the case, and the jury could not reasonably infer that the judge was expressing an opinion as to the facts of the case. We hold that the trial

court did not err in posing questions to the witness. Accordingly, there was no plain error.

**[3]** In his third assignment of error, defendant argues that the trial court committed plain error by not declaring a mistrial after jurors viewed Exhibit 5 in its unredacted form. We disagree.

In *State v. Upchurch*, our Supreme Court held as follows:

"It is well settled that the decision of whether to grant a mistrial rests in the sound discretion of the trial judge and will not be disturbed on appeal absent a showing of an abuse of discretion. A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision."

332 N.C. 439, 453, 421 S.E.2d 577, 585 (1992), *quoting State v. Barts*, 316 N.C. 666, 682, 343 S.E.2d 828, 839 (1986).

In the present case, the State sought to publish Exhibit 5, a written copy of A.J.'s statement to Detective Howell during the investigation. The statement was redacted to omit statements that did not corroborate A.J.'s testimony. When copies of the statement were handed to the jurors, the trial judge recognized that the original, unredacted version was mistakenly included in the copies. The judge instructed the two jurors that held copies of the original statement to return them to the bailiff. The judge then inquired of those jurors regarding their observations of the unredacted statement. One juror indicated that he glanced at the unredacted statement enough to compare it to the redacted statement and realized that it was not the same page. The other juror stated that he thumbed through the statement, but did not read it for content. The jury then continued to read the exhibits without further inquiry from the trial judge. Defendant raised no objection at the time. At the close of evidence, the judge gave the following instruction to the jury:

I need to tell you also that with regard to State's Exhibit Number 5 that I asked you about, this statement that some of you looked at the first line or two . . . it's important that you not consider and I instruct you to disregard anything you read in this State's Exhibit Number 5 that had a line through it. That is not admitted into evidence. That's why the copies you received had certain gaps in it. You are to totally disregard anything that you read in the original of State's Exhibit 5 to the extent that it was not

included in the Xerox copies that each of you received that have gaps in each. You are instructed to totally disregard State's Exhibit 5 except those matters which are contained in the Xerox copies of State's Exhibit 5 which you each were given a copy of.

In reviewing this issue, we find the case of *State v. Black* instructive. 328 N.C. 191, 400 S.E.2d 398 (1991), *distinguished on other grounds by State v. Buckner*, 342 N.C. 198, 464 S.E.2d 414 (1995). In *Black*, the trial court granted a motion *in limine* by the defendant to forbid any evidence concerning the defendant's prior drug dealings. At trial, a detective read into evidence a written statement by defendant's co-conspirator, part of which indicated that the defendant had been involved with drugs in the past. The trial court then instructed the jury to disregard the statement. The Supreme Court found that the trial court did not err in failing to declare a mistrial after the detective's testimony, stating that "[w]hen the trial court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured." 328 N.C. at 200, 400 S.E.2d at 404, *citing State v. Walker*, 319 N.C. 651, 655, 356 S.E.2d 344, 346 (1987). Likewise, we conclude that any prejudice to defendant's case was cured by the trial judge's instructions to those jurors that saw the unredacted statement. Therefore, we hold that the trial court did not abuse its discretion by not declaring a mistrial. Accordingly, there was no plain error.

[4] In his final assignment of error, defendant argues that the trial court erred by not dismissing the charges for insufficiency of the evidence at the close of the State's evidence, and at the close of all evidence. We disagree.

As an initial matter, we note that once defendant's motion to dismiss at the close of the State's evidence is overruled, "[i]f the defendant introduces evidence, he thereby waives any motion for dismissal or judgment as in case of nonsuit which he may have made prior to the introduction of his evidence and cannot urge such prior motion as grounds for appeal." N.C. Gen. Stat. § 15-173 (2003). Thus, we will only consider defendant's motion to dismiss at the close of all evidence.

In ruling on a motion to dismiss based on insufficiency of evidence, "the trial court must determine whether there is substantial evidence of each element of the offense charged." *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 387 (1984). "Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). When reviewing the evidence, the trial court must consider even incompetent evidence in the light most favorable to the prosecution, granting the State the benefit of every reasonable inference. *See State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984).

For the first-degree statutory rape charge, the State is required to prove that (1) defendant engaged in vaginal intercourse (2) with a victim who is a child under the age of thirteen years, and (3) the defendant is at least twelve years old and is at least four years older than the victim. *See* N.C. Gen. Stat. § 14-27.2 (a)(1) (2003).

For the first-degree sexual offense charge, the State is required to prove that (1) defendant engaged in a sexual act, (2) with a victim who is a child under the age of thirteen years old, (3) and the defendant is at least twelve years old and is at least four years older than the victim. *See* N.C. Gen. Stat. § 14-27.4(a)(1) (2003).

To prove the felony of indecent liberties with a child, the State must establish that defendant is (1) sixteen years of age or more and at least five years older than the victim, and that he (2) willfully took or attempted to take any immoral, improper, or indecent liberties with a victim under the age of sixteen years for the purpose of arousing or gratifying sexual desire, or willfully committed or attempted to commit any lewd or lascivious act upon or with the body or any part or member of the body of a victim under the age of sixteen years. *See* N.C. Gen. Stat. § 14-202.1 (2003).

Each of the crimes with which defendant is charged requires the State to prove that defendant engaged in a sex act with the victim. Defendant specifically argues that because the nurse and doctor who examined A.J. testified that they did not find conclusive physical evidence that a sex act occurred, the State lacked sufficient evidence to overcome defendant's motions to dismiss. However, this evidence does not negate A.J.'s testimony that defendant committed numerous sexual acts against her. Furthermore, the forensic evidence corroborates A.J.'s testimony. The State presented evidence of seminal fluid collected from A.J.'s bedroom that matched defendant's DNA. Viewing this evidence in the light most favorable to the State, and giving the State the benefit of every reasonable inference, we conclude that the State presented sufficient evidence from which a jury could find that defendant committed first-degree statutory rape, first-

UNIFOUR CONSTR. SERVS., INC. v. BELLSOUTH TELECOMM., INC.

[163 N.C. App. 657 (2004)]

degree sexual offense, and indecent liberties with a child. Therefore, we hold that the trial court properly submitted these charges to the jury, and that the trial court did not err in denying defendant's motion to dismiss.

No error.

Judges BRYANT and ELMORE concur.