THE STATE OF NORTH CAROLINA v. TEDDY TERRELL BETHEA

No. COA04-537

(Filed 6 September 2005)

## 1. Criminal Law— continuance denied—no prejudice

The trial court did not abuse its discretion by denying defendant's motion for a continuance to prepare for a witness not disclosed by the State until the morning of the trial. The trial court did postpone the trial for one day to allow defense counsel to interview the witness and there was no evidence of how defendant would have been better prepared with the continuance or that he was materially prejudiced by its denial.

## 2. Criminal Law— impermissible juror contact—requested limiting instruction denied

There was no prejudicial error in the trial court's refusal to give defendant's requested limiting instruction that neither the defense nor the State was connected with an impermissible contact with jurors in an elevator. The court questioned the jurors about their ability to be fair and impartial, and defendant did not show that any jurors were prejudiced by the misconduct or that there would have been a different result with the instruction.

## 3. Criminal Law— control of witness examination—no abuse of discretion

The trial court did not abuse its discretion in a prosecution for murder and assault in its efforts to control the examination of witnesses by defense counsel. Although defendant argued that the court gave the jury a sense of partiality favoring the State, it is clear that the court focused on moving the trial forward.

## 4. Constitutional Law— right of confrontation—reports forming basis of expert opinion—no violation

The Confrontation Clause does not act as a bar to testimonial statements admitted for purposes other than the truth of the matter asserted. The trial court here did not err when it allowed an SBI agent to use another agent's report as the basis of his expert opinion that shell casings were discharged from the weapon in question. It is clear in this case that the testimony was offered as the basis of an expert's opinion rather than for the truth of the matter asserted.

**5. Constitutional Law— double jeopardy—attempted first-degree murder and assault—no violation**

Double jeopardy was not violated by the submission to the jury of both attempted first-degree murder and assault with a deadly weapon inflicting serious injury. The charge of attempted murder does not contain an assault with a deadly weapon or serious injury requirement, and assault with a deadly weapon with intent to kill inflicting serious injury does not require premeditation and deliberation.

**6. Sentencing— prior record level—defendant's stipulation— no prejudice**

There was no prejudicial error in the determination of defendant's prior record level for sentencing where defense counsel appeared to stipulate to the State's worksheet. Moreover, defendant's record level is the same even without the conviction defendant now claims was erroneously considered.

Judge HUDSON concurs in the result only.

Appeal by defendant from judgments entered 10 September 2003 by Judge A. Moses Massey in Guilford County Superior Court. Heard in the Court of Appeals 7 March 2005.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Kathleen M. Waylett, for the State.*

*Parish & Cooke, by James R. Parish, for defendant-appellant.*

JACKSON, Judge.

On 10 September 2003, a jury convicted Teddy Terrell Bethea ("defendant") of one count of attempted first-degree murder and one count of assault with a deadly weapon with intent to kill inflicting serious injury against Efrem Colson ("Colson"). The jury also convicted defendant of one count of attempted first-degree murder and one count of assault with a deadly weapon with intent to kill inflicting serious injury against Michelle Carden ("Carden"). After consolidating the counts, the trial court sentenced defendant, a level IV offender, to confinement in the North Carolina Department of Correction for a minimum of two hundred and fifty-one months and a maximum of three hundred and eleven months.

On 27 November 2001, Carden and Colson were shot while sitting in Carden's car in front of a house located in Guilford County, North

STATE v. BETHEA

[173 N.C. App. 43 (2005)]

Carolina. After the shooting, Carden and Colson left the scene to find help. Upon finding police officers, Carden got out of the vehicle and Colson drove away. Carden had a gunshot wound to her right shoulder, and was bleeding from her left forearm. Colson was found in the vehicle into which defendant had fired. Both individuals were subsequently hospitalized for their injuries. Defendant was apprehended leaving the scene of the shooting.

At the scene, officers found three shell casings in the roadway. The windshield of the vehicle Colson was found in had a bullet hole in it. The passenger's side window had been shot out and there was blood located on that side of the vehicle. A 9mm Glock Pistol (the "weapon") was found a few weeks after the shooting near where defendant had been seen running away from the scene of the shooting. State Bureau of Investigation Agent Dave Santora ("Agent Santora"), a forensic firearms examiner, tested the weapon and determined that the four shell casings recovered from the scene were from the same weapon recovered by officers investigating the shooting. It was later determined that the gun used in the shooting had been stolen by Colson and Kevin Darden ("Darden"), approximately one month prior to the shooting and that Darden subsequently had sold the weapon to defendant.

At the scene, Detective James O'Connor ("Detective O'Connor") questioned Carden about the identity of the shooter. Carden stated that she did not know defendant and had never seen him before, but that she heard Colson yell, "Teddy Bethea shot us." Carden also identified defendant as the shooter in a lineup and at trial, and provided a statement to the police, identifying defendant as the shooter.

On 30 June 2003, the trial court granted defense counsel's motion to continue in order to allow for additional time to prepare for the hearing and to investigate the facts relating to the weapon used in the shooting. On 2 September 2003, the first day of trial, the State provided defendant with a copy of a statement it had obtained from Darden. The State's attorney notified defense counsel approximately two hours prior to trial that they had located and interviewed a witness (Darden) incarcerated in the North Carolina Department of Correction, who was prepared to testify at trial that he had stolen the weapon during a breaking and entering and then sold that firearm to defendant. Defense counsel moved to continue the case because he needed more time to investigate this new information. The trial court denied defense counsel's motion, but recessed

the hearing until the following morning to allow time for defense counsel to interview Darden.

Defendant, while testifying at trial, denied shooting Colson and Carden, denied buying the weapon from Colson and Darden, and denied accusing Colson of stealing from him.

[1] Defendant first asserts that the trial court committed reversible error when it denied defense counsel's motion to continue because defense counsel was not permitted sufficient time to investigate and prepare for the State's untimely disclosure of a new witness on the morning of defendant's trial. Defendant further contends that the trial court committed reversible error when it denied defendant's motion for a mistrial when there was impermissible contact with jurors, prejudicing defendant's jury panel.

It is within the trial court's discretion to grant or deny a motion for continuance. *State v. Tunstall*, 334 N.C. 320, 328, 432 S.E.2d 331, 336 (1993) (citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 11 L. Ed. 2d 921, 931 (1964)); *State v. Roper*, 328 N.C. 337, 348, 402 S.E.2d 600, 606, *cert. denied*, 502 U.S. 902, 116 L. Ed. 2d 232 (1991). While this determination rests within the trial court's discretion, "that discretion does not extend to the point of permitting the denial of a continuance that results in a violation of a defendant's right to due process." *Tunstall*, 334 N.C. at 328, 432 S.E.2d at 336; *Roper*, 328 N.C. at 349, 402 S.E.2d at 606. When a motion for continuance is based upon a defendant's constitutional right to assistance of counsel and to confront witnesses, the issue is one of law and thus becomes fully reviewable on appeal. *State v. Harris*, 290 N.C. 681, 686, 228 S.E.2d 437, 440 (1976); *see Tunstall*, 334 N.C. at 328, 432 S.E.2d at 336 (citing *State v. McFadden*, 292 N.C. 609, 611, 234 S.E.2d 742, 744 (1977); *State v. Smathers*, 287 N.C. 226, 230, 214 S.E.2d 112, 114-15 (1975); *State v. Hackney*, 240 N.C. 230, 235, 81 S.E.2d 778, 781 (1954); *State v. Farrell*, 223 N.C. 321, 326, 26 S.E.2d 322, 325 (1943)). This constitutional right to assistance of counsel and the right to confront witnesses are " 'guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States and by sections 19 and 23 of Article I of the Constitution of North Carolina.' " *Tunstall*, 334 N.C. at 328, 432 S.E.2d at 336 (citing *State v. Harris*, 290 N.C. 681, 686-87, 228 S.E.2d 437, 440 (1976)).

A defendant further is entitled to have " 'reasonable time to investigate, prepare and present his defense.' " *Tunstall*, 334 N.C. at 328,

432 S.E.2d at 336 (quoting *Harris*, 290 N.C. at 687, 228 S.E.2d at 440). Our Court previously has found that there is no definite " 'length of time for investigation, preparation and presentation . . ., and whether [the] defendant is denied due process must be determined upon the basis of the circumstances of each case.' " *Tunstall*, 334 N.C. at 329, 432 S.E.2d at 337 (quoting *Harris*, 290 N.C. at 687, 228 S.E.2d at 440); *State v. Horner*, 310 N.C. 274, 277, 311 S.E.2d 281, 284 (1984). To establish that a constitutional violation has occurred, "a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense." *Tunstall*, 334 N.C. at 329, 432 S.E.2d at 337. Inadequate time to prepare may be shown by defendant through either a showing of " 'how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion.' " *Id.* (quoting *State v. Covington*, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986)); *see also State v. Morgan*, 359 N.C. 131, 143, 604 S.E.2d 886, 894 (2004) (" '[W]hen the motion raises a constitutional issue, denial of the motion is grounds for a new trial only upon a showing that "the denial was erroneous and also that [the] defendant was prejudiced as a result of the error." ' ") (quoting *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982)).

In the instant case, defendant has shown no evidence that he would have been better prepared had the motion to continue been granted or that he was materially prejudiced by the denial of his motion. The record tended to show the State voluntarily gave defendant a copy of Darden's written statement on the morning of trial. Darden's statement noted that in October 2001, he and Colson stole the weapon at issue, which they later sold to defendant. The State, however, was not required to provide defendant with a copy of Darden's statement prior to Darden's testifying on direct examination. *State v. Harris*, 323 N.C. 112, 122, 371 S.E.2d 689, 695-96 (1988). Moreover, defendant conceded that the statement provided to defense counsel on the day of trial did not constitute discoverable information and that the State voluntarily had provided a copy to defendant.

> State:    I don't believe . . . that this information is discoverable. It's certainly not exculpatory as to his client, so it wouldn't be *Brady* material. He is getting it before trial, before jury selection. . . .

STATE v. BETHEA

[173 N.C. App. 43 (2005)]

Court:    Mr. Butler, sir, do you wish to respond to the State's contention that under our rules of discovery this material is not included?

. . . .

Defense:  And I can't, in all fairness, . . . say that it's required. . . . I would rather [the State] let me know about information so I can do a better job representing my client, so I can do a better job pretrial in determining whether to go to trial or not. You know, whether or not that's true doesn't change the fact that the State did voluntarily disclose it . . . .

In the interest of justice, the trial court postponed the trial until the following morning to allow defense counsel an opportunity to interview Darden, although it denied defendant's second motion to continue.

Court:    The Court having considered the arguments before it denies the motion to continue. However, in the spirit of accommodating counsel for the defendant, the Court will hold this matter open for jury selection until in the morning in order to allow counsel some time to investigate the matters that he has referred to here in his arguments for a continuance.

The record further indicated that prior to 2 September 2003, the trial court granted defendant's first motion to continue to allow defense counsel more time to prepare adequately, including more time to prepare for newly discovered information relating to scientific evaluation of the crime weapon. Defense counsel had ample opportunity to conduct an investigation into the facts surrounding the October 2001 incident.

Defense:  The alleged weapon that was used . . . was discovered some five or six weeks later . . . . It was sent away, and I learned in the discovery process that in fact, the gun had belonged in . . . a breaking and entering . . . . One of the victims of the shooting in this case was a codefendant with . . . Darden. That's the new witness that I found out about five minutes after twelve this morning . . . . Darden and . . . Colson . . . were codefendants on this matter. *I did an investigation. I talked to Officer Saintsing, I've seen all the records*

*from that. I've got everything that I need to show the connection that this particular [weapon] had been stolen by the victim and a codefendant. But I come in today . . . and find out . . . he's going to be a witness.*

(Emphasis added).

Therefore, we conclude that "the trial court did not abuse its discretion in denying defendant's motion to continue, as there was no evidence presented to show how defendant 'would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion.' " *State v. McCullers*, 341 N.C. 19, 30-33, 460 S.E.2d 163, 170-71 (1995) (quoting *State v. Covington*, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986)). This assignment of error is overruled.

**[2]** Defendant next asserts that the trial court committed reversible error by refusing to give defendant's proposed limiting instruction regarding the impermissible contact with jurors.

"A mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." *State v. Blackstock*, 314 N.C. 232, 243-44, 333 S.E.2d 245, 252 (1985) (citing *State v. Calloway*, 305 N.C. 747, 291 S.E.2d 622 (1982)). Whether to grant a motion for mistrial is within the trial court's discretion, and its ruling will not be disturbed unless it clearly amounts to a manifest abuse of discretion. *State v. Perkins*, 345 N.C. 254, 277, 481 S.E.2d 25, 34, *cert. denied*, 522 U.S. 837, 139 L. Ed. 2d 64 (1997); *State v. Wood*, 168 N.C. App. 581, 608 S.E.2d 368, 370 (2005); *State v. Ward*, 338 N.C. 64, 92-93, 449 S.E.2d 709, 724 (1994), *cert. denied*, 514 U.S. 1134, 131 L. Ed. 2d 1013 (1995). The question of misconduct is determined based on the facts and circumstances of each case. *Wood*, 168 N.C. App. at 583-84, 608 S.E.2d at 370. "The trial judge is in a better position to investigate any allegations of misconduct, question witnesses and observe their demeanor, and make appropriate findings." *Id.* Accordingly, when a defendant alleges juror misconduct, the trial court is responsible for investigating the matter and making an appropriate inquiry. *Id.* (quoting *State v. Najewicz*, 112 N.C. App. 280, 291, 436 S.E.2d 132, 139 (1993) (emphasis omitted)). " 'Not every violation of a trial court's instruction to jurors is such prejudicial misconduct as to require a mistrial.' " *Id.* at 584, 608 S.E.2d at 370 (quoting *State v. Harris*, 145 N.C. App. 570, 578, 551 S.E.2d 499, 504 (2001)).

In the instant case, three days after defendant's trial began, a juror reported to the trial judge that two courtroom spectators told five jurors in an elevator that the victims were lying when they said that defendant had shot them. The trial court instructed the five jurors not to "consider in any way what took place, set it completely out of your mind and not consider it in any way in your deliberations." The trial court then questioned each of the five jurors individually and asked if they could completely set aside the comment, not consider the spectator's comments, and not allow it to influence them in any way. All five jurors responded affirmatively. The trial court instructed the five jurors not to discuss what they had heard with other members of the jury.

When the jury was brought back into the courtroom, the trial judge informed the jury that two people expressed "an opinion about the lack of credibility . . . of a person or persons . . . in this trial." The trial judge further instructed that the jurors were to "base [their] verdict on the evidence presented in [the] courtroom, the law as given to [them] by this judge, and [their] common sense, not something that may have been said in an elevator or any other matter outside [the] court proceeding." The trial judge then made the following statement to the jury:

> Court: It has been brought to my attention that there is a possibility that some other event or events or transactions may have occurred that should not have occurred with regards to the jury and other persons. . . . Has anything happened, anything been said in your presence, any gesture been made, has anything occurred at all since this trial began, that causes you to feel that you cannot be fair and impartial to both sides in the trial of this case? If anything of that sort has occurred, please raise your hand.

> Jury: (No response)

> Court: I have made arrangements for you to be able to use an elevator that's back here in the back, to spare you having to walk through the public lobby and use the public elevator. So when you leave today, you will be escorted a different route than you've been taking.

At the conclusion of this inquiry, the trial judge once again asked the five jurors who had been in the elevator whether they could put aside the comments. The five jurors reiterated that they could. Subse-

quently, the trial court denied defendant's request to instruct the jury that there was no evidence this event was connected to either the State or defense.

Here, the trial court made an appropriate investigation into the matter and questioned the jurors individually. The trial court further questioned each juror regarding his or her ability to be fair and impartial. Defendant has not shown that any of the jurors were prejudiced by the alleged misconduct or that a different result would have been reached had the trial court granted defendant's request to give a limiting instruction regarding the impermissible contact with jurors. *See State v. Brown*, 335 N.C. 477, 488, 439 S.E.2d 589, 596 (1994); *see also State v. Larrimore*, 340 N.C. 119, 456 S.E.2d 789 (1995); *State v. Lippard*, 152 N.C. App. 564, 574, 568 S.E.2d 657, 664, *disc. rev. denied*, 356 N.C. 441, 573 S.E.2d 159 (2002). Accordingly, the denial of defendant's motion to continue did not result in a "substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2003). Therefore, this assignment of error is overruled.

**[3]** Defendant next contends the trial court committed plain error when it repeatedly entered objections on behalf of the prosecution and criticized defense counsel in front of the jury, thus giving the jury a sense of partiality favoring the State. Specifically, defendant argues that such conduct by the trial court violated defendant's due process rights and his right to a fair trial. We disagree.

Our Supreme Court previously has stated that:

[a] prerequisite to our engaging in a "plain error" analysis is the determination that the [trial court's action] constitutes "error" at all. Then "before deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict."

*State v. Shepherd*, 163 N.C. App. 646, 652, 594 S.E.2d 439, 443-44 (2004) (quoting *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986), *distinguished by State v. Young*, 317 N.C. 396, 346 S.E.2d 626 (1986) (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986))). "The court may interrogate witnesses, whether called by itself or by a party," and may question a witness to clarify confusing or conflicting testimony. N.C. Gen. Stat. § 8C-1, Rule 614(b) (2003); *Shepherd*, 163 N.C. App. at 652,

594 S.E.2d at 444 (quoting *State v. Chandler*, 100 N.C. App. 706, 710, 398 S.E.2d 337, 339 (1990) (citing *State v. Whittington*, 318 N.C. 114, 347 S.E.2d 403 (1986))). On appeal, the trial judge's broad discretionary power to supervise and control the trial " 'will not be disturbed absent a manifest abuse of discretion.' " *State v. Mack*, 161 N.C. App. 595, 598, 589 S.E.2d 168, 171 (2003), (quoting *State v. Goldman*, 311 N.C. 338, 350, 317 S.E.2d 361, 368 (1984)), *cert. denied*, 543 U.S. 966, 160 L. Ed. 2d 236 (2004).

> In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized. Unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered *harmless*.

*Mack*, 161 N.C. App. at 598, 589 S.E.2d at 171 (quoting *Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995) (emphasis added)).

In the instant case, the trial judge interrupted defense counsel's questioning of witnesses on numerous occasions. For example, during the cross examination of the State's first witness, the trial court interjected:

Defense: Have you also seen a statement that's been signed by . . . Colson that [defendant] was not the shooter?

Witness: Have I seen it? Yes.

. . . .

Defense: Well, the document that you saw—

Witness: It's notarized; yes.

Defense: Okay. And it says that [defendant] did not shoot him. [Defendant] was there, but [he] did not shoot him. You've seen that document, haven't you?

Witness: Yes, I have.

. . . .

Defense: And in that notarized statement that you've seen, he clearly says [defendant] did not shoot him?

Court: Well, asked and answered. Please proceed.

Additional similar exchanges occurred. All of the trial judge's comments were made in open court in the presence of the jury.

**STATE v. BETHEA**

[173 N.C. App. 43 (2005)]

The last time the trial judge interrupted defense counsel was not in open court.

> Court:    I'm laughing because I'm not going to believe that any time is going to be saved in this trial by any method whatsoever. Go ahead. I'm listening to your serious argument about the admissibility or inadmissibility of these exhibits. Go ahead.

As demonstrated by the exchanges recited above, the trial court did not abuse its discretion in its efforts to control examinations of witnesses by defense counsel. Our courts previously have stated that "[t]he trial court has a duty to control the examination of witnesses, both for the purpose of conserving the trial court's time and for the purpose of protecting the witness from prolonged, needless, or abusive examination." *State v. White*, 340 N.C. 264, 299, 457 S.E.2d 841, 861, *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995). Based on the record before this Court, it is clear that the trial court focused on moving the trial forward by maintaining control over certain witness examinations by defense counsel. This assignment of error is overruled.

[4] Defendant also asserts the trial court erred when it allowed an incompetent witness to testify as to evidence regarding the ballistics and firearms testing. Specifically, defendant argues the trial court erred when it allowed Agent Scott Jones ("Agent Jones"), a forensic firearms examiner assigned to the firearms and toolmark section for the State Bureau of Investigation lab, to rely on Agent Santora's findings in order to form an opinion as to the identity of the weapon used to fire shell casings recovered from the scene of the shooting. Defendant argues that Agent Jones' testimony violated the rule set forth in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). We disagree.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In essence, the goal of the Confrontation Clause is to ensure reliability of the evidence and to act as "a procedural rather than a substantive guarantee." *Crawford*, 541 U.S. at 61, 158 L. Ed. 2d at 199.

> It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of

cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Id.*

A violation of the defendant's Sixth Amendment right of confrontation is determined by examining "(1) whether the evidence admitted was testimonial in nature; (2) whether the trial court properly ruled the declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant." *State v. Clark*, 165 N.C. App. 279, 283, 598 S.E.2d 213, 217, *disc. rev. denied*, 358 N.C. 734, 601 S.E.2d 866, *appeal dismissed*, 359 N.C. 192, 607 S.E.2d 651 (2004) (citing *Crawford*, 541 U.S. at 54, 158 L. Ed. 2d at 203 (2004)).

In *Crawford*, the Court determined that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59, 158 L. Ed. 2d at 197. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . ." *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203.

In the instant case, however, even if Agent Jones' statements were testimonial in nature, his statements still do not violate the rule set forth in *Crawford*. This is because the Court recognized various exceptions to its rule: the Confrontation Clause does not act as a bar to testimonial statements admitted for purposes other than the truth of the matter asserted. *Crawford*, 541 U.S. at 59, n.9, 158 L. Ed. 2d at 197 (citing *Tennessee v. Street*, 471 U.S. 409, 414, 85 L. Ed. 2d 425 (1985)). One such purpose may include the basis for an expert's opinion.

North Carolina General Statutes section 8C-1, Rule 703 (2003) provides:

[F]acts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

In *State v. Jones*, our Supreme Court stated that this rule permits "an expert witness to rely on an out-of-court communication as a basis for an opinion and to relate the content of that communication to the jury." 322 N.C. 406, 410, 368 S.E.2d 844, 846 (1988) (citing *In re Wheeler*, 87 N.C. App. 189, 360 S.E.2d 458 (1987)). In *Jones*, over defendant's objection, the trial court allowed a State Bureau of Investigation agent to testify as to the standard State Bureau of Investigation procedures for fingerprint identification and to inform the jury that another agent verified the match. *Id.* "Rule 703 permits an expert witness to base an opinion on the out-of-court opinion of an expert who does not testify." *Id.* at 410-11, 368 S.E.2d at 846. As such, the Court held that "[t]he opinion of the other examiner thus necessarily forms a part of the basis for the opinion to which the witness testified, and it clearly was reasonable for an expert in the field of fingerprint identification to rely upon such a procedure." *Id.* at 414, 368 S.E.2d at 848. *See also, State v. McCord*, 140 N.C. App. 634, 649, 538 S.E.2d 633, 642-43 (2000) (When the court allowed an expert witness, who had reviewed another SBI Agent's file, to testify as to SBI procedures and that someone other than himself conducted the testing of DNA, . . . this information was "inherently reliable."); *State v. Daughtry*, 340 N.C. 488, 511, 459 S.E.2d 747, 758 (1995), *cert. denied*, 516 U.S. 1079, 133 L. Ed. 2d 739 (1996); *State v. Quick*, 329 N.C. 1, 29-30, 405 S.E.2d 179, 196 (1991) (establishing the basis for expert testimony is admissible for non-hearsay purposes); *State v. Wade*, 296 N.C. 454, 462, 251 S.E.2d 407, 412 (1979) (If the expert's opinion "is admissible the expert may testify to the information he relied on in forming it for the purpose of showing the basis of the opinion.").

In the instant case, the weapon was located twenty days after the shooting of Carden and Colson. Agent Santora of the State Bureau of Investigation lab received the weapon and several shell casings from the scene for investigation. Agent Santora then examined these items, conducted tests, and prepared a report of his findings. At trial, Agent Jones, a forensic examiner for the State Bureau of Investigation, testified in Agent Santora's place.

State:      Have you had occasion to review your records at the SBI lab to see who conducted the examination?

Witness:  Yes, I have.

State:      And who was it?

Witness:  It was at that time Agent Dave Santora . . . .

State:     And is he still with the SBI lab?

Witness:  No, he's not.

Without objection, Agent Jones was accepted as an expert in forensic firearms identification. His duties included examining fired cartridge cases, bullets, and projectiles recovered from crime scenes to identify their characteristics. Agent Jones also tested firearms to determine whether the cases, bullets, or projectiles recovered were from certain firearms.

Based on Agent Jones's examination of the shell casings recovered from the shooting, and his review of tests conducted by Agent Santora, Agent Jones, over defendant's objection, testified to his conclusion that the four shell casings recovered from the shooting had been fired from the weapon in question.

State:     And have you reviewed [Agent Santora's] notes and his findings?

Witness:  Yes, sir.

State:     Have you also reviewed his lab report?

Witness:  Yes, sir.

State:     Have you, since you've been here today, examined, at least with the naked eye, the gun and the shell casings?

Witness:  Yes, I have.

State:     From looking at the records, what did your section receive for firearms examination in this case?

Defense: If your Honor please, I'm going to have to object, . . . I'm going to request a voir dire at this time.

. . . .

Defense: I think it's very important that we have the person, so that I can properly cross-examine the person who conducted these tests . . . . I preserve my right to claim it is hearsay, and that this agent is not the one who conducted the tests, and therefore I'm not being given an opportunity to examine the person who did do the testing.

. . . .

**STATE v. BETHEA**

[173 N.C. App. 43 (2005)]

Court:   The court notes the objection, the Court overrules the
         objection.

. . . .

State:   And based on your review of Agent Santora's notes and
         the other records there from your section, was a
         firearms examination done concerning those items of
         evidence?

Witness: Yes, it was.

. . . .

State:   Okay. And does your file and the notes of Agent Santora
         indicate that the shell casings under this case number
         were examined and compared to test fired casings from
         this weapon?

Witness: Yes.

State:   Okay. And did Agent Santora prepare a laboratory re-
         port based upon that examination?

Witness: Yes, he did.

. . . .

State:   Agent Jones, based on your training and experience,
         and your review of Agent Santora's notes, do you have
         an opinion, to a scientific certainty and to your own sat-
         isfaction, as to whether or not the shell casings that
         were examined were fired from this [weapon]. . . ?

Witness: Yes, I do.

. . . .

Witness: That is that all the fired casings, all four fired cartridge
         cases, were fired in this [weapon], to the exclusion of
         all other guns.

Defendant alleges that Agent Jones' testimony concerning the con-
tents of Agent Santora's report was hearsay, and therefore, inadmis-
sible at trial. Based on the evidence, however, it is clear that Agent
Jones' testimony was not offered for the truth of the matter asserted.
Rather, his testimony was offered as a basis of an expert's opinion,
which falls within the exception set forth in *Crawford*.

Accordingly, we hold that the trial court did not err when it allowed Agent Jones to use Agent Santora's report as the basis of his expert opinion that the shell casings were discharged from the weapon in question. Therefore, this assignment of error is overruled.

**[5]** In the instant case, defendant was convicted of attempted first-degree murder and assault with a deadly weapon with the intent to kill inflicting serious injury of both Colson and Carden. Defendant also contends the trial court erred when it submitted to the jury both attempted first-degree murder and assault with a deadly weapon with the intent to kill inflicting serious injury in violation of his state and federal constitutional rights to be free from double jeopardy.

The Double Jeopardy Clause of the Fifth Amendment provides, in relevant part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also* N.C. Const. art. I, section 19. This Clause is made applicable to North Carolina through the Fourteenth Amendment. *State v. Battle*, 279 N.C. 484, 486, 183 S.E.2d 641, 643 (1971).

In order for double jeopardy to apply, the two convictions must be identical:

> [E]ven where evidence to support two or more offenses overlaps, double jeopardy does not occur unless the evidence required to support the two convictions is identical. If proof of an additional fact is required for each conviction which is not required for the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same.

*State v. Tirado*, 358 N.C. 551, 579, 599 S.E.2d 515, 534 (2004), *cert. denied sub nom, Queen v. North Carolina*, 544 U.S. 909, 161 L. Ed. 2d 285 (2005) (quoting *State v. Murray*, 310 N.C. 541, 548, 313 S.E.2d 523, 529 (1984), *overruled on other grounds by State v. White*, 322 N.C. 506, 369 S.E.2d 813 (1988)).

To be convicted of attempted first-degree murder, the State must prove the defendant (1) had a specific intent to kill another; (2) made a calculated overt act to carry out that intent; (3) possessed malice, premeditation, and deliberation accompanying the act; and (4) failed to complete the intended killing. N.C. Gen. Stat. § 14-17 (2003); *Tirado*, 358 N.C. at 579, 599 S.E.2d at 534; *State v. Peoples*, 141 N.C. App. 115, 117, 539 S.E.2d 25, 28 (2000). "The elements of assault with a deadly weapon with intent to kill inflicting serious injury are: (1) an assault, (2) with the use of a deadly weapon, (3) with an intent to kill,

and (4) inflicting serious injury, not resulting in death." *Tirado*, 358 N.C. at 579, 599 S.E.2d at 534 (citing N.C. Gen. Stat. § 14-32(a) (2003); *Peoples*, 141 N.C. App. at 117, 539 S.E.2d at 28). When the defendant is charged with assault with a deadly weapon with intent to kill inflicting serious injury, the State must prove "the use of a deadly weapon" and "proof of serious injury;" however, the charge of attempted murder does not contain the assault with a deadly weapon or serious injury requirement. *Tirado*, 358 N.C. at 579, 599 S.E.2d at 534; *State v. Rainey*, 154 N.C. App. 282, 285, 574 S.E.2d 25, 27 (2002); *see* N.C. Gen. Stat. § 14-17, -32(a) (2003). Moreover, when the defendant is charged with attempted first-degree murder, the State must show proof of premeditation and deliberation; however, these elements are not required for the charge of assault with a deadly weapon with intent to kill inflicting serious injury. *Tirado*, 358 N.C. at 579, 599 S.E.2d at 534 (citing N.C. Gen. Stat. § 14-17, -32(a) (2003)). "[E]ach offense contains at least one element not included in the other." *Tirado*, 358 N.C. at 579, 599 S.E.2d at 534. Defendant contends the instant case is unique on its facts and therefore requests this Court to reevaluate *Tirado*. However, this we cannot do, for "we are bound by this holding until it is overturned by a higher court." *State v. Forrest*, 168 N.C. App. 614, 624, 609 S.E.2d 241, 247 (2005) (citing *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989)). Accordingly, defendant has not been subjected to double jeopardy and this assignment of error is overruled.

**[6]** Finally, Defendant asserts the trial court erred when it sentenced defendant as a prior record level IV offender because his prior convictions were ineligible to be considered when determining his prior record points.

A defendant's prior record level is calculated by taking the "sum of the points assigned to each of the [defendant's] prior convictions that the court finds to have been proved in accordance with" the North Carolina General Statutes, section 15A-1340.14. Under section 15A-1340.14(f), a prior conviction shall be proved by any of the following methods:

(1)  Stipulation of the parties.

(2)  An original or copy of the court record of the prior conviction.

(3)  A copy of records maintained by the Division of Criminal Information, the Division of Motor Vehicles, or of the Administrative Office of the Courts.

(4) Any other method found by the court to be reliable.

N.C. Gen. Stat. § 15A-1340.14(f) (2003). The State must prove, by a preponderance of the evidence, that defendant's prior convictions exist and that the defendant standing before the court is the same defendant named in the prior conviction. *Id.*

Here, the trial court, after determining defendant had eleven points, sentenced defendant within the presumptive range as a Record Level IV offender, to two hundred and fifty-one months minimum and three hundred and eleven months maximum in the North Carolina Department of Correction. Defendant's prior convictions included: (1) misdemeanor larceny, on 18 November 1992; (2) possession of cocaine, on 25 May 1993; (3) felony larceny, on 16 September 1996; (4) possession of stolen goods, on 11 April 1996; and (5) attempted assault with a deadly weapon with intent to inflict serious injury, on 11 April 1996. During the sentencing phase, the trial court, the State, and defendant engaged in the following exchange:

State:      The only evidence I have on sentencing is the prior record work sheet that I prepared. I believe counsel has seen this. I show him with 11 prior record points, placing him in Record Level IV. . . . Do you stipulate he has 11 points, Record Level IV?

Defense:  I stipulate that that document is the same as what I looked at and researched; yes.

. . . .

State:      Your Honor, that's the only additional evidence I have at sentencing. I would like to be heard at the appropriate time.

Court:      Will there be any evidence for the defendant?

Defense:  No, your Honor.

No other documents were offered to the Court and the State did not present original or copied records of defendant's prior convictions. While the State did not offer any document other than their own worksheet of calculated points, defendant appeared to stipulate to the State's findings listed within that worksheet—that defendant had eleven prior record points. Defense counsel certainly failed to make clear that he was not stipulating to the State's prior record worksheet and presented no contrary information to the court at the time the

stipulation was being discussed. Based on North Carolina General Statutes, section 15A-1340.14(f), stipulation of the parties is sufficient to prove defendant in fact had eleven prior record points.

Assuming, *arguendo,* that the State did not meet their burden of proof by a preponderance of the evidence, that error was merely harmless. *State v. Smith,* 139 N.C. App. 209, 219-20, 533 S.E.2d 518, 524 (2000) (trial court's erroneous determination that defendant had ten points, when it should have found defendant had nine points, was harmless as defendant correctly was determined to have a prior record level of IV). Defendant, relying on North Carolina General Statutes, section 15A-1340.14(d), contends in his brief that the trial court should have counted only one of defendant's two convictions on 11 April 1996. Pursuant to subsection (d), which provides, in pertinent part, that "if an offender is convicted of more than one offense in a single superior court during one calendar week, only the conviction for the offense with the highest point total is used." N.C. Gen. Stat. § 15A-1340.14(d) (2003). Even if the trial court had included only the points for the conviction on 11 April 1996, the trial court still would have determined that defendant had a total of nine points, which is within the Record Level IV point range. Therefore, we hold that defendant was sentenced properly as a Record Level IV offender and this assignment of error is overruled.

No error.

Chief Judge MARTIN concurs.

Judge HUDSON concurs in result only.