MURPHY, Judge.
 

 *186
 
 Willie James Langley ("Defendant") appeals from his judgment for assault with a deadly weapon with intent to kill, assault with a deadly weapon with intent to kill inflicting serious injury, two counts of attempted first degree murder, possession of a firearm by a felon, discharge of a weapon into an occupied motor vehicle, and attaining habitual felon status. On appeal, he contends that the trial court erred by (1) denying Defendant's Motion for a Mistrial; (2) giving jury instructions that constructively amended the habitual felon indictment; and (3) proceeding on a facially defective habitual felon indictment. After
 
 *187
 
 careful review, we hold that the trial court did not abuse its discretion in denying Defendant's Motion for a Mistrial as any error was invited by Defendant. However, we agree with Defendant that the trial court proceeded on a facially deficient habitual felon indictment. Therefore, we order that the judgment regarding the habitual felon conviction be vacated and the case be remanded for resentencing on the underlying felonies without the habitual felon enhancement, and we need not reach the issue of whether the trial court's jury instructions materially varied from the allegations in the habitual felon indictment.
 

 Factual Background
 

 On 24 September 2014,
 
 [1]
 
 Jesse Atkinson, Sr., Jesse Atkinson, Jr., and a friend of Atkinson Jr.'s, Kion, drove to Vance Street in Greenville in a car belonging to Kion. When they arrived, the men parked the car; Kion exited and the Atkinsons remained in the car. A few minutes later, a blue car, containing Defendant and Mr. Davron Lovick, passed by, then U-turned and pulled up beside Kion's car. Defendant began to fire a gun at the Atkinsons through the rolled-down driver's side window. Atkinson, Sr. was shot in his right calf and left thigh.
 

 Although the above acts resulted in the charges now in dispute, Defendant bases his appeal primarily on conduct that took place at trial, after jury deliberation began. Approximately an hour into deliberation, the foreman sent a question to the trial judge: "With the charge of assault with a deadly weapon of Atkinson, Jr. with intent to kill does the law state intent to kill only or does it include inflicting serious bodily injury as well?" In response, the trial court returned the jury to the courtroom and reread the pertinent instructions. Just over an hour later,
 
 *168
 
 the jury sent another question: "With the two attempted first degree murder charges do they have to have the same verdict?" The trial court told the jury they did not, and provided them with a written copy of the instructions for each offense. Before recessing for the evening, the trial court instructed the jurors not to deliberate on the case, except when they were all together in the jury room, and not to look at the television, read the newspaper, or listen to the radio.
 

 The next morning, the foreperson immediately sent the following note to the court: "[O]ne juror Google'd intent to kill on the internet to try to understand the law, and, second, can we get clarification on the
 
 *188
 
 underlined item on page four of Court's Exhibit Number 1?" The judge again returned the jury to the room and inquired:
 

 All right, now, first, I'm going to address the first one. Which juror Google'd intent?
 

 All right, now, Ladies and Gentlemen, at the beginning of the case, I think y'all remember, that you are to follow the law as given to you by the Court; do y'all remember that? Remember me asking you that? And this is the reason. And it's because everyone tried for the same crime in North Carolina should be treated in the same way and have the same law applied to him. That's only fair. Now, I'm going to ask each one of you to pledge to me that, that's what you're going to do. Now, if all of you can accept and follow the law as given to you by the Court, a North Carolina Judge, North Carolina Court, if you can do that, please, raise your hand.
 

 (All twelve jurors raise their hands.)
 

 Thank you. And can you disregard any other definition of intent to kill or anything else other than what I give you because it is, I can assure, the accepted law in North Carolina. It is applied in every case. Can you disregard any other law other than the law that's given to you by the Court? And if you can just raise your hand, please.
 

 (All twelve jurors raise their hands.)
 

 Thank you. Now, the underlined word is the legal effect. If the Defendant intended to harm one person but instead harmed a different person the legal effect would be the same as if the Defendant had harmed the intended victim. And, Ladies and Gentlemen, I have given you the instructions that-and I've given you that the Defendant intended to commit first degree murder. That's an element of the charge of attempted first degree murder. And I've defined for you intent. And then I've defined for you what happens when someone else is hurt or harmed other than the person who was intended-the Defendant intended to kill or harm. And I'm going to just ask you to apply the law as I've given it to you here. Do y'all understand?
 

 (All jurors nod their heads affirmatively.)
 

 *189
 
 Judge Duke then turned to the second question, explaining the underlined item on page four of Court's Exhibit Number 1.
 

 Once the jury exited the courtroom, Defendant moved for a mistrial and the following exchange took place:
 

 [DEFENSE COUNSEL]: Your Honor, as to the way you presented, I felt like you just restated what you had already said. However, given the question-given the nature of what happened, I feel like I need to move for the Court to declare that this is a mistrial, that the jurors have gone outside of the Court's instructions to follow the law as given to them. They have gone on the Internet to look up the law. It is unclear whether they went to the Internet last night and did research and deliberated outside of the jury room. It's unclear whether other jurors asked this juror to Google or look on the Internet to find the law and declare what the law is. I think at this point the jury has been tainted and I would ask for a mistrial.
 

 THE COURT: Well, her question-the foreman's question-let me read it back to you-her question says, one juror-
 

 [DEFENSE COUNSEL]: Yes, your Honor, but the-
 

 THE COURT:
 
 Now, I'll bring them back here and quiz them all. What do you say?
 

 [PROSECUTOR]: Your Honor, I think your instructions to them were sufficient, your questions to them, if they would agree to follow only the law that you have given them is sufficient.
 

 *169
 
 THE COURT: I do, too. I'm going to deny your motion.
 

 [DEFENSE COUNSEL]: Yes, sir, thank you.
 

 (Emphasis added). After 43 minutes of deliberation, the jury returned a verdict, finding Defendant guilty of all counts charged.
 

 Following the verdict, the habitual felon phase of the trial began. The indictment listed Defendant as being a habitual felon on the basis of the following:
 

 [1. T]hat on or about September 11, 2006, the defendant did commit the felony of Felony Larceny, in violation of North Carolina General Statute 14-72(a), and that on or about February 15, 2007, the defendant was convicted of
 
 *190
 
 Felony Larceny in the Superior Court of Pitt County, North Carolina; and
 

 [2. T]hat on or about October 08, 2009, the defendant did commit the felony of
 
 Robbery with a Dangerous Weapon
 
 , in violation of North Carolina General Statute 14-87, and that on or about September 21, 2010, the defendant was convicted of the felony of Common Law Robbery in the Superior Court of Pitt County, North Carolina; and
 

 [3. T]hat on or about August 24, 2011, the defendant did commit the felony of
 
 Robbery with a Dangerous Weapon
 
 , in violation of North Carolina General Statute 14-87.1, and that on or about May 5, 2014, the defendant was convicted of the felony of Common Law Robbery in the Superior Court of Pitt County, North Carolina ... [.]
 

 (Emphasis added). As evidence, the State called an Assistant Clerk of Superior Court of Pitt County, Cathy Watson, to describe the judgment relevant to each of the convictions listed in the habitual felon indictment. The trial court admitted and published each judgment to the jury. In the trial court's charge to the jury, it instructed that the jury should return a guilty verdict if it found the following true beyond a reasonable doubt:
 

 [1.] That he committed the offense of felony larceny on 11 September 2006 and was convicted of felony larceny on 15 February 2007;
 

 [2.] That he committed the offense of
 
 common law robbery
 
 on 8 October 2009 and was convicted of common law robbery on 21 September 2010; and
 

 [3.] That he committed the offense of
 
 common law robbery
 
 on 24 August 2011 and was convicted of common law robbery on 5 May 2014.
 

 (Emphasis added). The jury found Defendant guilty of attaining habitual felon status and the trial court consolidated Case Nos. 14CRS57851-52, 3452, and 3454 into a judgment on a Class B2 felony, sentencing Defendant to a term of imprisonment of 238 to 298 months, followed by a consecutive sentence 14CRS57853 to a term of imprisonment of 110 to 144 months, followed by another consecutive sentence in 14CRS57854 to a term of imprisonment of 110 to 144 months. Defendant gave notice of appeal on 29 January 2015.
 

 *191
 

 Analysis
 

 On appeal, Defendant presents three arguments: (1) the trial court erred by denying his Motion for Mistrial; (2) the trial court erred by giving jury instructions that constructively amended the habitual felon indictment; and (3) the trial court proceeded on a facially deficient habitual felon indictment. We only reach (1) and (3) given our determination that the trial court proceeded on a facially deficient habitual felon indictment, and we need not scrutinize the appealed jury instructions.
 

 I.
 
 Juror Misconduct
 

 Defendant first argues that the trial court abused its discretion in denying his motion for a mistrial based on juror misconduct. We disagree because we find that any error was invited by Defendant.
 

 A trial judge "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061 (2015). We review a trial court's decision to grant or deny a motion for mistrial on the basis of juror
 
 *170
 
 misconduct for abuse of discretion.
 
 State v. Salentine
 
 ,
 
 237 N.C. App. 76
 
 , 80-81,
 
 763 S.E.2d 800
 
 , 804 (2014). "An abuse of discretion occurs 'only upon a showing that the judge's ruling was so arbitrary that it could not have been the result of a reasoned decision.' "
 
 Id
 
 . at 81,
 
 763 S.E.2d at 804
 
 (quoting
 
 State v. Dial
 
 ,
 
 122 N.C. App. 298
 
 , 308,
 
 470 S.E.2d 84
 
 , 91,
 
 disc. review denied
 
 ,
 
 343 N.C. 754
 
 ,
 
 473 S.E.2d 620
 
 (1996) ).
 

 "When juror misconduct is alleged, it is the trial court's responsibility 'to make such investigations as may be appropriate, including examination of jurors when warranted, to determine whether misconduct has occurred and, if so, whether such conduct has resulted in prejudice to the defendant.' "
 
 Salentine
 
 ,
 
 237 N.C. App. at 80-81
 
 ,
 
 763 S.E.2d at 804
 
 (quoting
 
 State v. Aldridge
 
 ,
 
 139 N.C. App. 706
 
 , 712,
 
 534 S.E.2d 629
 
 , 634,
 
 appeal dismissed and disc. review denied
 
 ,
 
 353 N.C. 269
 
 ,
 
 546 S.E.2d 114
 
 (2000) ). Generally, an examination is required "where some prejudicial content is reported."
 
 State v. Harrington
 
 ,
 
 335 N.C. 105
 
 , 115,
 
 436 S.E.2d 235
 
 , 240 (1993) (citation omitted). When conducting an examination, the trial court has discretion to determine the scope and procedure thereof.
 
 State v. Burke
 
 ,
 
 343 N.C. 129
 
 , 149,
 
 469 S.E.2d 901
 
 , 910 (1996).
 

 Whether misconduct occurred depends on "the facts and circumstances in each case."
 
 State v. Drake
 
 ,
 
 31 N.C. App. 187
 
 , 190,
 
 229 S.E.2d 51
 
 , 54 (1976). "Not every violation of a trial court's instruction to jurors
 
 *192
 
 is such prejudicial misconduct as to require a mistrial."
 
 State v. Wood
 
 ,
 
 168 N.C. App. 581
 
 , 584,
 
 608 S.E.2d 368
 
 , 370 (citation omitted),
 
 disc. review denied
 
 ,
 
 359 N.C. 642
 
 ,
 
 614 S.E.2d 923
 
 (2005) ). The trial court's decision "should only be overturned where the error is so serious that it substantially and irreparably prejudiced the defendant, making a fair and impartial verdict impossible."
 
 State v. Gurkin,
 

 234 N.C. App. 207
 
 , 211,
 
 758 S.E.2d 450
 
 , 454 (2014). "Ordinarily one who causes (or we think joins in causing) the court to commit error," invites the error, and "is not in a position to repudiate his action and assign it as ground for a new trial."
 
 State v. Payne
 
 ,
 
 280 N.C. 170
 
 , 171,
 
 185 S.E.2d 101
 
 , 102 (1971).
 

 Here, it is undisputed that juror misconduct took place. The dispute is whether the misconduct resulted in such substantial and irreparable prejudice to Defendant's case that the trial judge was required to declare a mistrial. Defendant argues that the trial court abused its discretion, depriving Defendant of his right to an impartial jury. We disagree, because Defendant invited any error that occurred and prevented further remedial efforts that may have been conducted by the trial court.
 

 When Defendant moved for mistrial, the trial court offered to continue the inquiry, even offering to interview each juror. Defendant did not respond to the trial judge's offer, yet, now, on appeal suggests that such an inquiry may have adequately protected Defendant's interests by contrasting the present case with
 
 State v. Bethea
 
 ,
 
 173 N.C. App. 43
 
 ,
 
 617 S.E.2d 687
 
 (2005), where the judge examined specific jurors involved in misconduct before questioning and instructing the entire jury to address the misconduct.
 

 While we recognize the growing problem of juror misconduct through the use of easily accessible electronics and potential Due Process and Equal Protection concerns, Defendant has prevented us from further review. Even assuming
 
 arguendo
 
 that the trial court abused its discretion in this instance, Defendant is not in a position to repudiate the action and argue that it is grounds for a new trial since he did not accept the trial court's offer to continue the inquiry when the judge offered to do so. Therefore, if any error took place, Defendant invited it.
 
 Payne
 
 ,
 
 280 N.C. at 171
 
 ,
 
 185 S.E.2d at 102
 
 .
 

 II.
 
 Habitual Felon Indictment
 

 Defendant argues that the habitual felon indictment was defective on its face. We agree.
 

 The facial validity of an indictment may be challenged "at any time, even if it was not contested in the trial court" because an indictment
 
 *193
 
 that is invalid on its face does not confer the trial court with jurisdiction.
 
 *171
 

 State v. Wallace
 
 ,
 
 351 N.C. 481
 
 , 503,
 
 528 S.E.2d 326
 
 , 341 (2000). Valid indictments must charge all essential elements of the charged offense.
 
 State v. Mason
 
 ,
 
 279 N.C. 435
 
 , 440,
 
 183 S.E.2d 661
 
 , 664 (1971). A valid habitual felon indictment must include: "[1] the date that prior felony offenses were
 
 committed
 
 , [2] the name of the state or other sovereign against whom
 
 said felony offenses
 
 were committed, [3] the dates that pleas of guilty were entered to or convictions returned in
 
 said felony offenses
 
 , and [4] the identity of the court wherein said pleas or convictions took place." N.C.G.S. § 14-7.3 (2015) (emphasis added). The Supreme Court of North Carolina paraphrased N.C.G.S. § 14-7.3 in
 
 State v. Cheek
 
 , when it held that a habitual felon indictment fully comported with the statute:
 

 by setting forth the three prior felony convictions relied on by the State, the dates
 
 these offenses
 
 were committed, the name of the state against whom they were committed, the dates defendant's guilty pleas for
 
 these offenses
 
 were entered, and the identity of the court wherein these convictions took place.
 

 339 N.C. 725
 
 , 729-30,
 
 453 S.E.2d 862
 
 , 865 (1995) (emphasis added). "Nothing in the plain wording of N.C.G.S. § 14-7.3 requires a specific reference to the predicate substantive felony in the habitual felon indictment."
 
 Id
 
 . at 728,
 
 453 S.E.2d at 864
 
 . However, for a habitual felon indictment to fully comport with statutory requirements there must be two dates listed for each prior felony conviction put forth in the habitual felon indictment-both the date the defendant committed the felony and the date the defendant was convicted of
 
 that same felony
 
 in the habitual felon indictment. N.C.G.S. § 14-7.3 ;
 
 Cheek
 
 ,
 
 339 N.C. at 729-30
 
 ,
 
 453 S.E.2d at 865
 
 .
 

 Here, the habitual felon indictment, as written, failed to meet the statutory requirements. The indictment listed Defendant as being a habitual felon on the basis of the following:
 

 [1. T]hat on or about September 11, 2006, the defendant did commit the felony of Felony Larceny,
 
 *194
 
 in violation of North Carolina General Statute 14-72(a), and that on or about February 15, 2007, the defendant was convicted of Felony Larceny in the Superior Court of Pitt County, North Carolina [ ("Conviction 1") ]; and
 

 [2. T]hat on or about October 08, 2009, the defendant did commit the felony of Robbery with a Dangerous Weapon, in violation of North Carolina General Statute 14-87, and that on or about September 21, 2010, the defendant was convicted of the felony of Common Law Robbery in the Superior Court of Pitt County, North Carolina [ ("Conviction 2") ]; and
 

 [3. T]hat on or about August 24, 2011, the defendant did commit the felony of Robbery with a Dangerous Weapon, in violation of North Carolina General Statute 14-87.1, and that on or about May 5, 2014, the defendant was convicted of the felony of Common Law Robbery in the Superior Court of Pitt County, North Carolina [ ("Conviction 3") ] ... [.]
 

 On its face, the indictment did not provide the offense date for Conviction 2 or Conviction 3. Instead, for both of these convictions, the indictment alleged offense dates for robberies with a dangerous weapon, and then gave conviction dates for two counts of common law robbery. There is nothing in the indictment alleging Defendant committed the crime of common law robbery on 8 October 2009 and was subsequently convicted on 21 September 2010; or 24 August 2011 and was subsequently convicted on 5 May 2014.
 

 It would be an impermissible inference to read into the indictment that common law robbery took place on 8 October 2009 or 24 August 2011 because that is not what the grand jury found when it returned its bill of indictment. The State cannot rest on an assertion that Defendant committed an offense on a date that it never presented to the grand jury. This would be a gross violation of Defendant's right to grand jury presentment. N.C. Const. art. I § 22.
 

 As the State emphasized, it is true that N.C.G.S. § 14-7.3 does not require that a habitual felon indictment list the predicate felony. However, we are not considering a case in which whether the predicate felony was listed is at issue. The issue is that the grand jury did list an offense that was committed on a date certain, and it was not the same crime of which the grand jury found
 
 *172
 
 Defendant had been convicted. The indictment listed no offense dates for the felonies resulting in Conviction 2 or Conviction 3.
 

 The dates of offense and the corresponding dates of conviction are essential elements of the habitual felon indictment because of the temporal requirements of N.C.G.S. § 14-7.1 :
 

 *195
 
 The commission of a second felony shall not fall within the purview of this Article unless it is committed after the conviction of or plea of guilty to the first felony. The commission of a third felony shall not fall within the purview of this Article unless it is committed after the conviction of or plea of guilty to the second felony.
 

 The State did not meet the requirements of the habitual felon indictment set out by statute as it did not provide an offense date for the crime the State
 
 convicted
 
 Defendant for committing. Defendant's habitual felon indictment, defective on its face, must be vacated.
 
 State v. Petersilie,
 

 334 N.C. 169
 
 , 175,
 
 432 S.E.2d 832
 
 , 836 (1993). Our decision to vacate the judgment for the habitual felon indictment on this ground makes it unnecessary to address whether the jury instructions materially varied from the fatally defective indictment.
 

 Conclusion
 

 For the reasons stated above, we conclude that the trial court proceeded on a facially deficient habitual felon indictment. Thus, we vacate the habitual felon conviction and remand the case for resenting on the underlying felonies without the habitual felon enhancement.
 

 NO ERROR IN PART; JUDGMENT VACATED AS TO THE HABITUAL FELON INDICTMENT; REMANDED FOR A NEW SENTENCING HEARING ON THE UNDERLYING FELONIES WITHOUT THE HABITUAL FELON ENHANCEMENT.
 

 Judges CALABRIA and DIETZ concur.
 

 [1]
 

 The offense conduct took place from the late hours of 24 September 2014 into the early morning hours of 25 September 2014.